PETTIBONE (BABCOCK v.). See Case No. 700.

---

## Case No. 11,043.

### PETTIBONE v. DERRINGER.

[4 Wash. C. C. 215;[1] 1 Robb, Pat. Cas. 152.]

Circuit Court, D. Pennsylvania. April Term, 1818.

PATENTS — EXPLANATION OF AMBIGUITY — DEPOSITION — EFFORTS TO PROCURE ATTENDANCE OF WITNESS—LETTERS CERTIFIED UNDER GOVERNMENT SEAL.

1. An ambiguity in a patent and specification may be explained by the affidavit annexed to the specification.

2. Where a deposition taken de bene esse, is offered in evidence, the party who offers it must prove that he has used diligence to procure the attendance of the witness.

[Cited in Hunter v. International Ry. Imp. Co., 28 Fed. 842.]

3. It is no objection to reading the deposition of a witness taken under a rule of court, who lives in another state more than one hundred miles from the place of trial, that he had been

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

in the city during the session of the court, the fact not being known to the party.

[Cited in Whitford v. Clark Co., 119 U. S. 525, 7 Sup. Ct. 308.]

4. The letters of the plaintiff to the secretary of state, containing applications for a patent, and specifications, certified under the seal of that department as papers remaining in that office, were properly admissible in evidence.

5. Depositions taken without a commissioner or rule of court, in the state of New York, more than one hundred miles from Philadelphia, but conforming in all respects to the thirtieth section of the judiciary act of 1789 [1 Stat. 80], may be read in evidence.

6. A deposition taken under the thirtieth section of the judiciary act of 1789, cannot be read in evidence unless the judge certifies that it was reduced to writing either by himself, or by the witness in his presence.

[Cited in Blake v. Smith, Case No. 1,502.]
[Cited in Goodhue v. Grant, 1 Pin. 558.]

This was an action on the case for an infringement of the plaintiff's patent for "a new and useful improvement in boring muskets, pistols and rifles, by an auger called the 'spiral groove' or 'twisted screw' auger." The specification states that this auger consists in the manner of making it, or the particular form or construction of the same, as also the mode of application. It then proceeds to state the way in which the auger is made, and that the difference in the form of this improved auger from the common screw auger used for wood is, that the point or cutter is next to the shank, and the auger is less twisted. That the shank is long enough to put through the barrel and fasten to the socket, and the machine that moves or turns the auger. The auger revolves about once per second, and the points or cutters are pressed against the iron that is to be bored from the inside of the barrel, by the force or application of one or more endless screws that revolve in a rack of cogs attached to the carriage, on which the barrels are fastened. The affidavit annexed to the specification states, that the patentee verily believes himself to be the first inventor of the improved method of making augers or bits, for boring muskets, pistols, and rifle barrels, as above specified and described. The defendant's plea was the general issue, and he gave notice to the plaintiff, that, "he should give in evidence the following matter to prove that the thing secured by patent was not originally discovered by the plaintiff, but had been in use anterior to the supposed discovery, or that he had surreptitiously obtained a patent for the discovery of another person." The notice then proceeds to state the persons by whom the screw auger and the mode of application had been discovered, and the places where they had been used anterior to the plaintiff's discovery. The plaintiff gave in evidence a letter from himself to the secretary of state, dated the 21st of January, 1799, and annexed a specification of an improvement in boring muskets, &c. agreeing

in every material circumstance with that annexed to his present patent, except that he states the auger used to be one called the "nut bit," invented by M'Cormick. In this letter he claims to be the inventor of the improvement, and claims a patent for the same. He also gave in evidence a similar application to the secretary of state, dated the 12th of August, 1799, accompanied by a similar specification, except that he speaks of and describes the twisted auger as his invention. Both specifications were accompanied by the usual affidavits. The tendency of the plaintiff's testimony was to prove that he was the first inventor of the twisted auger for boring musket, pistol and rifle barrels; that he was also the inventor of the mode of drawing, instead of pushing the auger through the barrel; and of the application of the endless screw to produce that effect; and also of the superiority of the plaintiff's invention to former modes of boring gun barrels. The defendant examined a number of witnesses to prove that the plaintiff was not the inventor of the twisted screw auger, nor of the mode of drawing the auger through the barrel, but that both had been invented and used before the plaintiff pretended to have invented either; also, that the difference between M'Cormick's auger, which the plaintiff acknowledged to have been in use before January, 1799, and of the screw auger of which he claimed to be the inventor in August, 1799, was not in principle, but in form only. Also, that M'Cormick's auger was preferable to the plaintiff's, and was more generally in use in the public gun manufactories.

WASHINGTON, Circuit Justice. The first question is, what is the discovery for which the plaintiff has obtained a patent? He contends that it is for the twisted auger, made, formed, and used, in the manner set forth in the specification. The defendant insists that it is confined to the twisted auger, and to no more. These cases are always embarrassing, because the originality of the patentee's discovery is almost always in issue, which involves not only the construction of the patent, taken in connection with the specification, which forms a part of it, but also a comparison between the invention for which the patent is granted, and that which is asserted to have been made prior to it. Both of these difficulties occur in the present case. The patent recites, that the applicant had represented himself to be the inventor of a new and useful improvement in boring muskets, &c. by an auger called the "spiral groove," or "twisted screw" auger. These expressions are perfectly equivocal, and may apply as well to an auger constructed for boring muskets, confining the improvement to the auger alone, or to that instrument, and the particular manner of using it, afterwards pointed out in the specification. This latter instrument describes the manner of making

the auger, its form, and how it may be used. But taken in connection with the patent, it does not necessarily follow that the manner of using the machine forms a part of the discovery; because, if the plaintiff was in fact the inventor of the auger only, and meant to claim no more, it was still proper that he should, under the requisitions of the third section of the law, describe in his specification the manner of using the auger, with the principle and several modes in which the application of that principle was contemplated by the inventor. Whether the want of an affidavit will avoid the patent, or will in all cases confine the patent to the invention stated in it, as the defendant's counsel have contended, are questions which need not be decided in this cause. But there can be no doubt, that where the construction of the patent and specification, as to the subject of the grant, is doubtful; the affidavit, if more precise, may be resorted to to explain the ambiguity. It would seem to be particularly proper to do so for restraining general expressions in the specification; as the oath required to be taken by the act of congress is, that the inventor does verily believe that he is the true inventor of the art, machine or improvement for which he solicits a patent.

These observations are strikingly applicable to this patent, which, as explained by the specification, contains no specific assertion that the plaintiff was the inventor of the peculiar manner of using the auger as described in the latter instrument, and the affidavit confines the invention to the improved method of making augers or bits, for boring musket barrels, &c. "as above specified and described." These latter expressions obviously refer to the method of making augers for boring muskets, which is distinctly described in the specification, and not "to the manner of using the auger," which, though described, has nothing to do with the method of making it. In the case of Evans v. Eaton [3 Wheat. (16 U. S.) 454] the supreme court construed the patent to amount to a grant to Evans, not only of an exclusive right to the entire improvement in the manufacture of flour, but to the improvement in the separate instruments employed in producing the general result. But this construction was formed upon the supposed intention of the parties to the patent, drawn not only from certain expressions in the specification, and also in the affidavit, but from the private act of congress, passed for the relief of Oliver Evans. In the specification, the patentee, after describing the hopper boy, the particular machine in controversy, and the other four machines employed in the manufacture of flour, adds, that "he claims, as his invention, the peculiar properties or principles which this machine (the hopper boy) possesses, of spreading, turning, and gathering the meal at one operation;" and the affidavit states, "that he verily believes he is the true and original inventor

of the improvements herein above specified, for which he solicits a patent."

Upon the whole, we are of opinion that the plaintiff's patent extends only to the auger described in the specification, and not to the method of using it.

2. The next question is, was the plaintiff the inventor of this instrument, as described in the specification? We have the authority of the plaintiff himself for saying that he made the discovery of that instrument in August, 1799; because, in his application to the state department on the 12th of that month, he so alleges the fact. It appears by a letter from Mr. Ames, the manager of the Springfield works, dated in September, 1799, that he had just received from the plaintiff one of these augers, and in that letter he gives to the plaintiff the merit of the discovery. Three witnesses, one of whom is this Mr. Ames, have sworn, that this auger was introduced at the Springfield works by a Mr. Holmes, about six months prior to the period when a similar one was sent there by the plaintiff. That it was much approved of, and that Holmes not only claimed but was considered at that place to be the inventor. If this evidence is believed by the jury, it is conclusive against the plaintiff. But if the jury should be of a different opinion, then, the next question will be, was the plaintiff entitled to a patent for his improvement? Or, in other words, is the twisted auger, of which he claims to be the inventor, an improvement in the principle, or merely a change in the form and proportions of the auger used for boring gun barrels prior to August, 1799? That the auger, styled the "nut bit," called M'Cormick's, was in use previous to the year 1799 was acknowledged by the plaintiff in his application to the state department in January, 1799, and was the auger which the plaintiff then contemplated using. This fact is corroborated by the testimony of three witnesses, who state that M'Cormick's auger was used at the Springfield works in 1797 and 1798, and was drawn, not pushed, through the barrel. Two other witnesses have stated that it was so used at M'Cormick's works, in the summer or autumn of 1798, and a sixth witness declares that it was so used at a still earlier period at Brian's works. On the other side, there are two witnesses who state that the method of drawing the auger through the barrel was not known or practised, until the discovery was made by the plaintiff. If the defendant's witnesses are believed, then the plaintiff is deprived, not only of the merit of having invented the twisted screw auger, but the manner of using it, by drawing instead of forcing it through the barrel; and then nothing will remain to the plaintiff of all that he has stated in his specification, but the application of the endless screw to move the carriage on which the barrel is placed, instead of the long screw, or the lever, or

weights, which were used by M'Cormick. M'Cormick's auger, or nut bit, as it is called, is made by filing out the grooves from a round solid piece of steel, having the cutters towards the shaft, and is drawn through the barrel. The twisted auger claimed by the plaintiff is made by twisting a plate of steel, so as to form the grooves, having the cutters next the shaft, and it is drawn through the barrel. That the twisted auger is a great improvement on the old method of boring gun barrels is undoubted; but whether it is so of M'Cormick's auger, you will judge from the evidence. The question for your determination is, whether it is an improvement on the principle of M'Cormick's auger, or whether it is merely a change in the form, or proportions of that auger. If only the latter, then it was not such an improvement as the plaintiff was entitled to secure to himself by a patent.

The last question is, whether the defendant has invaded the plaintiff's patent. This you must decide upon the evidence.

(The following questions upon evidence were decided upon the trial.

1. That where a deposition taken de bene esse is offered in evidence, the party offering it must prove that he had used due diligence to procure the attendance of the witness, and particularly that he had made inquires at the last place of abode of the witness, in order to have him served with a subpœna.

2. That it is no objection to reading the deposition of a witness who lives in another state, more than one hundred miles from the city, taken under a rule of this court, that he had been in Philadelphia during the sitting of this court, where it appeared that the fact of the witness being in the city was unknown to the party at whose instance the deposition was taken. Whether, if the party had known that the witness was in the city, the case would have been altered, was not decided.

3. That the letters of the plaintiff to the secretary of state of the 31st January and 12th August, 1799, containing applications for a patent, and specifications certified under the seal of that department, as papers remaining in that office, were properly admissible in evidence. See 2 Bior. & D. Laws, 52.

4. That depositions taken without a commission, or rule of court, in the state of New York, more than one hundred miles from Philadelphia, but conforming in all respects to the thirtieth section of the judicial act of the 24th September, 1789, might be read in evidence.

5. That a deposition taken under the thirtieth section of the judicial act cannot be read, unless the judge certifies that it was reduced to writing, either by himself, or by the witness in his presence.)